STATE OF CONNECTICUT *v.* DARRYL FLETCHER
(AC 20285)

Lavery, C. J., and Foti and Healey, Js.

Argued March 26—officially released May 15, 2001

*Donald D. Dakers*, special public defender, with whom, on the brief, was *Michael Williams*, law student intern, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David P. Gold*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Darryl Fletcher, appeals from the judgment of conviction, rendered following a trial to the court, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b), possession of marijuana in violation of General Statutes § 21a-279 (c) and three counts of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[1] On appeal, the defendant claims that the trial

[1] On August 4, 1999, the state withdrew a seventh count charging the defendant with possession of a sawed-off shotgun in violation of General Statutes § 53a-211 (a). The defendant received a total effective sentence of twenty years, execution suspended after thirteen years, followed by five years of probation.

court improperly failed to grant his motion to suppress. We affirm the judgment of the trial court.

On the basis of the evidence presented during the hearing on the defendant's motion to suppress and at the subsequent trial before the court, the court reasonably could have found the following facts. On March 23, 1998, Reginald Sutton and Patricia Helliger, officers from the New Haven police department who were dressed in plain clothes, observed the defendant wearing a black leather jacket and selling drugs on the porch at 637-639 Howard Avenue in New Haven. They observed numerous transactions and called for assistance from fellow officers David Sydnor and Donald Harrison. As Sutton and Helliger approached, several men left the porch, and the defendant entered the front door of 639 Howard Avenue. All four of the officers followed the defendant inside and chased him up the stairs. The defendant entered the last room on the left and tried to lock the door behind him. After two or three attempts, the officers forced their way in, fearing that the defendant had a firearm on his person along with narcotics.

The dimensions of the room were approximately twelve by fourteen feet and contained a dresser on one side of the window, in front of which the defendant was standing, and a closet on the other side. The defendant was standing about two feet from the dresser and four feet from the closet. The defendant was no longer wearing the black leather jacket, and the officers observed the jacket on a chair near the entrance of the room.

The defendant was handcuffed and patted down. He had $60 on his person and was placed under arrest. The defendant admitted that the apartment was his, as were the contents of the dresser. An open drawer revealed a plastic sandwich bag containing eleven blue

glassine packets that contained narcotics, along with six glassine packets of crack cocaine found in a pair of rolled up socks.

Because the defendant was standing near an open window when the officers entered, a search below the apartment window was conducted. When nothing was found there, Sydnor went to the closet next to the defendant believing that he might have tossed narcotics or weapons in there. When Sydnor moved a pile of clothes to check for weapons or narcotics, he discovered a piece of plastic sticking out between the closet floorboards. He pulled on the plastic, which revealed a space beneath the floorboards. The plastic turned out to be a baggie containing blue glassine packets identical to those that had been found in the drawer. An inspection revealed that the cavity below the floorboards contained a cache of both weapons and narcotics. There were four loaded handguns and five bundles of heroin, each of which contained ten pieces, six other bundles of heroin containing a total of fifty-four pieces, a plastic baggie containing forty-one packets of cocaine and a baggie containing marijuana.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . [W]e engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 225, 673 A.2d 1098 (1996).

The defendant does not contest the legality of his arrest or the lawful presence of the officers in the apart-

ment. The defendant's sole claim on appeal is that the search of the closet and the seizure of the items under the floorboards violated his rights under the fourth and fourteenth amendments to the United States constitution and under article first, § 7, of the constitution of Connecticut.

The court noted that "a person who knew that guns were located in the shallow hole discovered by Sydnor could have reached down to the closet floor and exposed the guns just as easily as Sydnor." The court concluded that the search of the closet was a search of an area that was within the defendant's immediate control incident to a lawful arrest and, therefore, was constitutionally permissible. This conclusion was based on a specific finding that the search of the closet was made because it was "close enough to the defendant so that the officers reasonably believed that the defendant might have been able to reach . . . [it] in order to obtain a weapon."

Whether the trial court properly found that the facts submitted were sufficient in connection with the motion to suppress is a question of law, and the court's determination on the issue is therefore subject to plenary review on appeal. See *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001). Great deference must be given to the findings of the trial court "because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id., 280.

"Our constitutional preference for warrants is overcome only in specific and limited circumstances." *State* v. *Miller*, 227 Conn. 363, 383, 630 A.2d 1315 (1993). "[A] lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant . . . whether or not there is probable cause to search." *State* v. *Badgett*, 200 Conn. 412, 425, 512 A.2d 160, cert.

denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); see also *United States* v. *Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (custodial arrest of suspect based on probable cause is reasonable intrusion under fourth amendment, and search incident to arrest requires no additional justification because lawful arrest establishes authority to search).

"Under article first, § 7, of the constitution of Connecticut, our Supreme Court has 'recognized that the police may make a search without a warrant incidental to a lawful custodial arrest.' *State* v. *Delossantos*, 211 Conn. 258, 266, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); see also *State* v. *Copeland*, [205 Conn. 201, 208–13, 530 A.2d 603 (1987)]; *State* v. *Shaw*, 186 Conn. 45, 48, 438 A.2d 872 (1982); J. Bruckmann, G. Nash & J. Katz, Connecticut Criminal Caselaw Handbook (1992) pp. 107–108." *State* v. *DaEria*, 51 Conn. App. 149, 161, 721 A.2d 539 (1998). "[W]hether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time . . . and not on the officer's actual state of mind at the time the challenged action was taken." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 441, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

The defendant argues that there was little or no probability that he could access the weapons because of both his distance from the closet and the fact that he was handcuffed before Sydnor had searched the closet. We are not persuaded. The distance[2] involved does not allow us to conclude that it would have been physically

[2] Although the court found that the defendant had been about four feet away from the closet when the officers entered, Sydnor testified that the distance was two feet. The only relevance of the distance goes to Sydnor's "reasonable belief" and to his subsequent actions in conducting the search of the closet.

impossible for the defendant to have accessed the nearby closet. As to the defendant's being handcuffed, the record is silent as to whether the defendant had his hands cuffed in front of or behind his body. In any event, as we noted in *State* v. *Reddick*, 15 Conn. App. 342, 346, 545 A.2d 1109, cert. denied, 209 Conn. 819, 551 A.2d 758 (1988), even "had the defendant already been handcuffed, it is not inconceivable that he may have grabbed for a gun . . . ." Proper police procedures following an arrest may require, for safety purposes, both a handcuffing and a search of the immediate surrounding area for weapons and to prevent evidence from being concealed or destroyed. We cannot conclude that once an arrestee has been handcuffed, police may not conduct a lawful search incident to that arrest.

We conclude that the court properly denied the defendant's motion to suppress.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] Having concluded that the motion to suppress was properly denied, we need not discuss the state's alternative theory of inevitable discovery. The state argued that the police could have obtained a search warrant because probable cause existed and that they would have obtained a search warrant but for Sydnor's inadvertent discovery of the guns and drugs.