STATE OF CONNECTICUT *v.* LUIS F. WILLIAMS
(AC 27941)

Bishop, DiPentima and Mihalakos, Js.

Argued May 20—officially released September 16, 2008

*Paul Bialobrzeski*, for the appellant (defendant).

*Elizabeth S. Tanaka*, certified legal intern, with whom were *Bruce R. Lockwood*, assistant state's attorney, and, on the brief, *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Luis F. Williams, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation

of General Statutes § 21a-278 (b), possession of a controlled substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b) and criminal possession of a firearm in violation of General Statutes § 53a-217. On appeal, the defendant claims that the trial court improperly failed to grant his motion to suppress. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On September 3, 2004, police officers from the New Britain and Waterbury police departments, aided by two United States marshals, executed an arrest warrant for the defendant at an efficiency apartment at 636 Riverside Avenue in Waterbury. The officers entered the apartment and found the defendant sitting on the couch in the living room, which was located directly in front of the door, and the defendant's brother, Josue Williams, lying on the floor next to the couch. The defendant was arrested and handcuffed.

Detective Mark Santopietro removed the cushions from the couch where the defendant had been sitting and discovered a pistol. Santopietro immediately notified the other officers of the presence of a firearm. Shortly after Santopietro's discovery, Sergeant Harold Setzer noticed a box of what he believed to be ammunition.[1] Concerned that there might be other individuals in the apartment, Setzer moved to do a protective sweep of the apartment.[2]

Setzer walked six to eight feet from where the defendant was located to a kitchen counter. At the counter, he saw Styrofoam cups filled with numerous bags of a

---

[1] It was later discovered that the objects Setzer observed were spent shotgun cartridges.

[2] A "protective sweep" is a "cursory inspection of those spaces where a person may be found." *Maryland* v. *Buie*, 494 U.S. 325, 335, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990).

substance he believed to be heroin. He next moved to the bedroom, where he opened a closet door and saw narcotics packaging and a narcotics sifter. Setzer did not seize any of the items he discovered but instead left them in place for the forensics staff. Setzer's entire sweep took less than one minute.

The defendant was charged with possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), possession of a controlled substance with intent to sell within 1500 feet of a school[3] in violation of § 21a-278a (b) and criminal possession of a firearm in violation of § 53a-217. On May 16, 2006, the defendant filed a motion to suppress all tangible evidence recovered from him and the apartment and any resulting statements he made. The court denied the motion in a memorandum of decision filed June 20, 2007.[4] The defendant subsequently was found guilty, after a jury trial, of all charges. The defendant thereafter appealed, challenging the court's denial of his motion to suppress the drugs found on the kitchen counter.

We first set forth our standard of review. "[O]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of

---

[3] The apartment where the defendant was arrested was located within 1500 feet of Barnard Grammar School.

[4] The court's thorough memorandum of decision provides a separate analysis for each piece of evidence the defendant's motion sought to suppress. Specifically, the court analyzed the defendant's motion in relation to (1) the firearm found in the couch, (2) the drugs discovered on the kitchen counter, (3) the items found in the closet and (4) his subsequent statement to the police. The defendant on appeal has not challenged the court's ruling as it pertains to the firearm found in the couch, the items seized from the closet or his subsequent statements. Accordingly, we will not review those aspects of the court's ruling.

the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Kimble*, 106 Conn. App. 572, 579, 942 A.2d 527, cert. denied, 287 Conn. 912, 950 A.2d 1289 (2008).

In the present case, the court determined that the contraband seized from the defendant's kitchen was discovered during a search incident to a lawful arrest. Specifically, the court concluded that the area searched was within the defendant's immediate control incident to his lawful arrest. We agree.

"Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. . . . [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. . . . One recognized exception to the warrant requirement is where the search has been undertaken incident to a lawful custodial arrest. . . . Under article first, § 7, of the constitution of Connecticut, our Supreme Court has recognized that the police may make a search without a warrant incidental to a lawful custodial arrest." (Internal quotation marks omitted.) *State* v. *Aylward*, 88 Conn. App. 90, 98, 868 A.2d 106, cert. denied, 273 Conn. 935, 875 A.2d 543 (2005). Accordingly, once the defendant was placed under arrest pursuant to a

valid warrant, Setzer properly conducted a search for any weapons or evidence within the immediate control of the defendant. See *Chimel* v. *California*, 395 U.S. 752, 762–63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

The defendant argues that under the circumstances of this case, the kitchen counter was not within his immediate control because there was little or no probability that he could have launched an attack on the police from his position face down and handcuffed in the living room.[5] This argument has been rejected under more dubious circumstances. See *State* v. *Fletcher*, 63 Conn. App. 476, 481–82, 777 A.2d 691 (valid search incident to arrest when police handcuffed defendant, then opened closet four feet next to where he was standing, moved pile of clothing to reveal floorboards, removed floorboards themselves and discovered hidden cavity containing contraband), cert. denied, 257 Conn. 902, 776 A.2d 1152 (2001). The defendant's argument seems to suggest that it was impossible for him to reach the kitchen counter from his location in the living room. The record and common sense suggest otherwise.

[5] The defendant also argues that the search was unconstitutional because there was little or no probability that his brother could have launched an attack on the police. This argument, however, is irrelevant to the question of whether the police officers conducted a proper search incident to an arrest but, rather, addresses the question of whether the police officers conducted a proper protective sweep of the defendant's apartment. But see concurring opinion. In response to this argument, the state urges us to adopt the logic of *Commonwealth* v. *Bui*, 419 Mass. 392, 395–96, 645 N.E.2d 689, cert. denied, 516 U.S. 861, 116 S. Ct. 170, 133 L. Ed. 2d 111 (1995), and find that the police may conduct a protective sweep for weapons in addition to unsecured persons when they have a reasonable belief that other people might be present on the premises. In light of our conclusion that Setzer's search of the kitchen counter was constitutionally permissible as a search incident to the defendant's arrest, we see no reason to decide whether a box containing a large amount of several kinds of ammunition provided the necessary reasonable, articulable suspicion that the apartment was harboring a person posing a danger to those on the arrest scene, which is required to conduct a constitutionally permissible protective sweep. See *State* v. *Cortes*, 276 Conn. 241, 253, 885 A.2d 153 (2005).

The defendant's apartment had an open area between the kitchen and the living room. The kitchen counter where Setzer searched was located six to eight feet from where the defendant was sitting. The short distance between the defendant and the kitchen counter, coupled with the contraband's location in a cup on top of the counter, does not allow us to conclude that it would have been impossible for the defendant to have reached items located in the area Setzer searched. Similarly, the fact that the defendant was handcuffed does not foreclose the possibility that he might have been able to reach a weapon located close by. See id., 482. Accordingly, we conclude that the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion DiPENTIMA, J., concurred.

BISHOP, J., concurring. Although I agree with the majority that the court properly denied the motion to suppress filed by the defendant, Luis F. Williams, I come to this conclusion following a road apart from my colleagues because I do not agree that the narcotics found in the kitchen were discovered pursuant to a valid search incident to the defendant's arrest. I believe, instead, that the narcotics were discovered pursuant to a valid cursory protective sweep for weapons and people in the apartment in which the defendant was arrested. Accordingly, I write separately.

"It is a basic principle of constitutional law that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. . . . The fourth amendment's requirement that a warrant issue from a neutral and detached judicial officer rests upon the desirability of having

magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. . . . [H]owever, the fourth amendment proscribes only unreasonable searches and seizures, and there will be occasions when, given probable cause to search, resort to the judicial process will not be required of law enforcement officers. Thus, where exigent circumstances exist that make the procurement of a search warrant unreasonable in light of the dangers involved . . . a warrant will not be required. . . . *State* v. *Januszewski*, 182 Conn. 142, 151–52, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); see *Chimel* v. *California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) (possible harm to police officer constitutes reasonable cause for warrantless search)." (Internal quotation marks omitted.) *State* v. *Vega*, 259 Conn. 374, 400–401, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

One such circumstance involves a search incident to an arrest to protect police from the risk of harm due to any weapons within the defendant's reach and also to secure contraband or evidence from destruction by the defendant. To be valid, however, such a search must be confined to the area within the defendant's immediate control. In *Chimel*, the United States Supreme Court held that a lawful custodial arrest allows the police to make a contemporaneous search without a warrant not only of the person arrested, but also of the surrounding area within the arrestee's " 'immediate control' . . . ." *Chimel* v. *California*, supra, 395 U.S. 763. Justification for such searches was found in the need to remove weapons that the arrestee "might seek to use in order to resist arrest or effect his escape" and to prevent the concealment or destruction of evidence. Id. Although, in *Chimel*, the court did not establish a

bright line test for determining whether an area is within an arrestee's "immediate control," decisional law following *Chimel* has determined this phrase to mean within an arrestee's wingspan; see *United States* v. *Hudson*, 405 F.3d 425, 432 (6th Cir. 2005); *United States* v. *Porter*, 738 F.2d 622, 627 (4th Cir.), cert. denied, 469 U.S. 983, 105 S. Ct. 389, 83 L. Ed. 2d 323 (1984); or within an arrestee's "grab" range. See *United States* v. *Hernandez*, 941 F.2d 133, 137 (2d Cir. 1991); cf. *United States* v. *Blue*, 78 F.3d 56, 59–60 (2d Cir. 1996). Accordingly, under *Chimel*, police may conduct "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence"; *Chimel* v. *California*, supra, 763; i.e., the "grab area."

Unlike my colleagues, I do not believe the record in this case fairly supports the trial court's conclusion that the kitchen countertop was in an area within the defendant's immediate control. The record indicates that when Setzer saw the cup containing narcotics on the countertop, the defendant was handcuffed, lying face down on the living room floor six to eight feet away and was being guarded by at least one officer. Under these circumstances, I cannot agree that a weapon concealed behind a box on the countertop was within the defendant's immediate control or his "grab area."[1] Thus, I disagree with the majority that the heroin was discovered in the course of a valid search incident to the defendant's arrest.[2]

---

[1] In *State* v. *Fletcher*, 63 Conn. App. 476, 777 A.2d 691, cert. denied, 257 Conn. 902, 776 A.2d 1152 (2001), relied on by the majority, although the contested evidence was found under the floorboards in a nearby closet, that area was only two to four feet away from where the defendant in that case was standing. Because, here, there was a distance of six to eight feet versus two to four feet between the defendant and the area being swept, and the defendant here was lying, handcuffed and face down on the floor, I think that *Fletcher* is readily distinguishable from the case at hand.

[2] In concluding to the contrary, my colleagues in the majority seem to suggest that the defendant had the burden to demonstrate that the area

I do believe, however, that Sergeant Harold Setzer, the officer who discovered the heroin, had the right to be where he was at the moment of discovery and that he had the right, at that moment, to be conducting a cursory sweep of the area both for other individuals who could be a threat to the police as well as for additional weapons.

My starting point is *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), which stands for the now well understood principle that when a police officer has a reasonable basis for detaining an individual, the officer may take reasonable precautions to protect his or her safety, including a patdown of the detainee for weapons. Following *Terry*, the Connecticut Supreme Court has noted: "Our past cases indicate . . . that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger . . . and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that [a warrantless search], limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See *Terry* [v. *Ohio*, supra, 21]. [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Id., [27]. . . . If, while conducting a legitimate *Terry*

---

was not within his immediate control. Because we are confronted with a warrantless search, I believe it is the state's burden to prove the exception and not the defendant's to disprove it. See *State* v. *Clark*, 255 Conn. 268, 291, 764 A.2d 1251 (2001) ("[t]he state bears the burden of proving that an exception to the warrant requirement applies when a warrantless search has been conducted").

search . . . the officer should . . . discover . . . weapons, he clearly cannot be required to ignore the [weapons], and the Fourth Amendment does not require [their] suppression in such circumstances. . . . *Michigan* v. *Long,* 463 U.S. 1032, 1049–50, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)." (Internal quotation marks omitted.) *State* v. *Vega,* supra, 259 Conn. 401. Although *Terry* and its progeny generally involve brief investigatory stops, I believe the principles of safety and security that underlie *Terry* are applicable to the facts at hand.

At the suppression hearing, Setzer testified that once the defendant was handcuffed, he conducted a protective sweep to make sure the rest of the apartment was secure. "In *Maryland* v. *Buie,* [494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)], the United States Supreme Court addressed the level of justification . . . required by the Fourth and Fourteenth Amendments before police officers, while effecting the arrest of a suspect in his home pursuant to an arrest warrant, may conduct a warrantless protective sweep of all or part of the premises. In *Buie,* an arrest warrant had been issued for the defendant and his suspected accomplice following an armed robbery that had been committed by two men. Id., 328. When the police went to the defendant's house to execute the warrant, the defendant was in the basement. He emerged from the basement peacefully, and the police arrested him. Id. One of the officers then entered the basement to determine whether anybody else was there and he observed certain incriminating evidence in plain view. Id. . . .

"Drawing upon its earlier decisions in *Terry* and *Long,* which had authorized limited frisks for weapons in the interest of officer safety, the court recognized an analogous interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other

persons who are dangerous and who could unexpect-
edly launch an attack. Id., 333. The court further
explained: The risk of danger in the context of an arrest
in the home is as great as, if not greater than, it is in
an on-the-street or roadside investigatory encounter.
A *Terry* or *Long* frisk occurs before a police-citizen
confrontation has escalated to the point of arrest. A
protective sweep, in contrast, occurs as an adjunct to
the serious step of taking a person into custody for
the purpose of prosecuting him for a crime. Moreover,
unlike an encounter on the street or along a highway,
an in-home arrest puts the officer at the disadvantage
of being on his adversary's turf. An ambush in a confined
setting of unknown configuration is more to be feared
than it is in open, more familiar surroundings. Id.

"Recognizing the often competing interests of the
individual's expectation of privacy and the officers'
safety, the court therefore determined that there were
two levels of protective sweeps. Concerning the first
tier of protective sweeps, the court concluded that as
an incident to the arrest the officers could, as a precau-
tionary matter and without probable cause or reason-
able suspicion, look in closets and other spaces
immediately adjoining the place of arrest from which
an attack could be immediately launched. Id., 334. Con-
cerning the second tier of protective sweeps, the court
concluded: Beyond that . . . we hold that there must
be articulable facts which, taken together with the
rational inferences from those facts, would warrant a
reasonably prudent officer in believing that the area to
be swept harbors an individual posing a danger to those
on the arrest scene. Id. The court further emphasized
that a protective sweep may extend only to a cursory
inspection of those spaces where a person may be
found; id., 335; and lasts no longer than is necessary to
dispel the reasonable suspicion of danger and in any
event no longer than it takes to complete the arrest

and depart the premises." (Citations omitted; internal quotation marks omitted.) *State* v. *Spencer*, 268 Conn. 575, 587–89, 848 A.2d 1183, cert. denied, 543 U.S. 957, 125 S. Ct. 409, 160 L. Ed. 2d 320 (2004).

Unlike most warrantless searches, which focus on the immediate danger posed by a suspect, a *Buie* protective sweep allows officers to prevent a potential ambush by searching for unseen third parties. This distinction similarly separates a *Buie* "protective sweep" from the other types of searches that law enforcement officials may conduct consistent with Fourth Amendment protections despite the fact that they are made without a warrant or probable cause. *Terry, Long* and *Chimel* authorize warrantless searches on less than probable cause in order for police "to assure themselves that the persons with whom they [are] dealing [are] not armed with, or able to gain immediate control of, a weapon . . . ." *Maryland* v. *Buie*, supra, 494 U.S. 333. A *Buie* protective sweep addresses instead the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id.

The *Buie* court explicitly declined to hold that the danger inherent in executing an arrest warrant will automatically justify a protective sweep. The court held: "The type of search we authorize today . . . is decidedly not 'automati[c],' but may be conducted only when justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." Id., 336.

Here, the officers had a warrant to arrest the defendant for assault in the second degree with a firearm, robbery in the first degree with a firearm and failure to appear for a narcotics charge. Upon entering the

defendant's apartment, Setzer saw a box with a substantial amount of several kinds of ammunition. Setzer testified that the large amount of ammunition indicated that there might be more people in the apartment. Setzer testified that because the police had already discovered a weapon under the couch cushion, and the large amount of ammunition indicated additional "traffic" in the apartment, he conducted a protective sweep of the apartment for officer safety. He testified that the sweep of the entire apartment took less than one minute, that he checked only those areas in which a person could hide and that at the time he discovered the cup containing narcotics, he had not searched every possible place in the apartment where a third person could be hiding. Setzer indicated that he also did a cursory search for weapons "just to see if any weapons were laying out in the open" in case somebody else was still in the apartment and might have access to any such weapons. In sweeping the kitchen, Setzer glanced behind a box that was on the counter to make sure there were no weapons there and saw a cup, which was in front of the box in plain view, filled with bags of heroin. Setzer did not pick up or move the cup. See *Arizona* v. *Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L. Ed. 2d 347 (1987).

I believe that Setzer's protective sweep for other individuals in the apartment was valid pursuant to the explicit language of *Buie* on the basis of the large amount and various types of ammunition that supported his concern that other parties might be present in the apartment. *Buie*, however, concerned only a protective sweep for individuals. Here, Setzer testified that he was looking for weapons as well as people. Because *Buie* did not involve a search for weapons, I do not believe its holding either permits or prohibits such a search. Implicit in *Buie*, however, is the idea that a police officer confronting a potentially dangerous situation should have the right to conduct a cursory sweep for weapons

if he or she has reason to believe other weapons may be present and available to others who may be lurking in unsearched parts of a residence.

"The tension between the promises of personal security in the Fourth Amendment to the Constitution and the need for police to be able to protect themselves from concealed weapons every time a suspect is stopped is real and ongoing. The conflict between the right to be let alone and the need for the police to be able to pursue enforcement and investigative tasks is equally sharp. In all of these contraplexes, the Supreme Court has made it clear that the Fourth Amendment protection from unlawful search and seizure is not an impenetrable barrier to the police performing their necessary tasks and protecting themselves from concealed weapons in such performance." *United States* v. *Reid*, 997 F.2d 1576, 1578 (D.C. Cir. 1993), cert. denied, 510 U.S. 1132, 114 S. Ct. 1105, 127 L. Ed. 2d 417 (1994).

*Buie* flows from *Terry* and *Long*, both of which are rooted in officer and public safety. "[T]he rationale for excepting the protective searches in *Terry*, *Long* and *Buie* from the warrant and probable cause requirements of the fourth amendment is dependent . . . on the need for swift action by police officers who, while conducting lawful investigations, find themselves in a position of imminent peril." *State* v. *Mann*, 271 Conn. 300, 315, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005). Recognizing this connection, the Supreme Judicial Court of Massachusetts has extended *Buie* to a cursory search for weapons, holding that "[t]he relevant safety concerns . . . are similar" because the officer "acted to take reasonable steps to ensure [the] safety" of the police officers making the arrest when the search was "limited in scope and occurred at a time when the suspicion of danger had not been dispelled." (Citation omitted; internal quo-

tation marks omitted.) *Commonwealth* v. *Bui*, 419 Mass. 392, 396, 645 N.E.2d 689, cert. denied, 516 U.S. 861, 116 S. Ct. 170, 133 L. Ed. 2d 111 (1995).

I agree with the Massachusetts court and I believe that the rationale in *Buie* that allows officers to search for individuals who could pose a threat to officer safety is the same rationale that should also allow the police to conduct a limited cursory sweep for weapons when there is a reasonable belief that there might be other people on the premises who could pose a safety risk to the police. As with the protective sweeps for individuals that are sanctioned under *Buie*, a protective sweep for weapons should be a cursory visual inspection and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Maryland* v. *Buie*, supra, 494 U.S. 335–36.

Here, Setzer left the living room where the defendant was handcuffed and first checked the kitchen for any threat to officer safety. At that point, he had not yet checked the rest of the apartment, including the bedroom, bathroom or closet. Additionally, while conducting the sweep, Setzer noticed the heroin but did not seize it. This fact further supports that this was a lawful protective sweep and not an illegitimate search for evidence. Because the apartment had not yet been cleared of any unknown persons and Setzer had a reasonable belief that other individuals or weapons could be on the premises, I believe his protective sweep of the premises for people and weapons, lasting no longer than one minute, was valid.

For the foregoing reasons, I join in the majority's conclusion that the court properly denied the defendant's motion to suppress.