******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LUIS F. WILLIAMS *v.* COMMISSIONER OF
CORRECTION
(AC 37909)

Alvord, Mullins and Sullivan, Js.

*Argued September 15—officially released December 20, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Stephanie L. Evans*, assigned counsel, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Brian Preleski*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's
attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, J. Following the habeas court's judgment denying his petition for a writ of habeas corpus, the petitioner, Luis Williams, appeals from the habeas court's denial of his petition for certification to appeal. On appeal, the petitioner claims that the habeas court abused its discretion when it denied his petition for certification to appeal from the habeas court's denial of his petition for a writ of habeas corpus, wherein he alleged that (1) his counsel[1] at trial provided ineffective assistance by failing to take curative measures to remedy prosecutorial impropriety that occurred during closing arguments, and (2) his counsel on direct appeal provided ineffective assistance by failing to raise a claim of prosecutorial impropriety. We conclude that the habeas court properly denied the petition for certification to appeal. We therefore dismiss the appeal.

The following facts, as set forth by this court on direct appeal, and procedural history are relevant to this appeal. "On September 3, 2004, police officers from the New Britain and Waterbury police departments, aided by two United States marshals, executed an arrest warrant for the [petitioner] at an efficiency apartment at 636 Riverside Avenue in Waterbury. The officers entered the apartment and found the [petitioner] sitting on the couch in the living room, which was located directly in front of the door, and the [petitioner's] brother, Josue Williams, lying on the floor next to the couch. The [petitioner] was arrested and handcuffed.

"Detective Mark Santopietro removed the cushions from the couch where the [petitioner] had been sitting and discovered a pistol. Santopietro immediately notified the other officers of the presence of a firearm. Shortly after Santopietro's discovery, Sergeant Harold Setzer noticed a box of what he believed to be ammunition. Concerned that there might be other individuals in the apartment, Setzer moved to do a protective sweep of the apartment.

"Setzer walked six to eight feet from where the [petitioner] was located to a kitchen counter. At the counter, he saw Styrofoam cups filled with numerous bags of a substance he believed to be heroin. He next moved to the bedroom, where he opened a closet door and saw narcotics packaging and a narcotics sifter. Setzer did not seize any of the items he discovered but instead left them in place for the forensic staff. Setzer's entire sweep took less than one minute." (Footnotes omitted.) *State* v. *Williams*, 110 Conn. App. 329, 331–32, 954 A.2d 878 (2008).

The petitioner subsequently was convicted following a jury trial of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of a controlled substance with intent to sell within 1500 feet of

a school in violation of General Statutes § 21a-278a (b), and criminal possession of a firearm in violation of General Statutes § 53a-217. The petitioner thereafter appealed, challenging the denial of his motion to suppress the drugs found on the kitchen counter. Id., 332. This court affirmed his conviction. Id., 334–35.

On September 28, 2009, the petitioner filed a petition for writ of habeas corpus. In his second amended petition filed at the habeas trial on April 2, 2015, the petitioner claimed, inter alia, that the acts and omissions of counsel at trial denied him his right to effective assistance of counsel. Specifically, he alleged that counsel was ineffective for failing to challenge, inter alia, improper comments made by the prosecutor during closing arguments. Additionally, he claimed that counsel's failure to raise a claim of prosecutorial impropriety in his criminal appeal denied him his right to effective assistance of appellate counsel.[2]

On April 2, 2015, in an oral decision, the habeas court denied the petitioner's habeas petition. On April 7, 2015, the court denied his petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

"We begin by setting forth the applicable standard of review. Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 166 Conn. App. 22, 30, 140 A.3d 414, cert. denied, 323 Conn. 905, 140 A.3d 414 (2016).

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . If this burden is not satisfied, then the claim that the judgment of the habeas court should be reversed does not qualify for consideration by this court." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction*, 153 Conn. App. 747, 751, 104 A.3d 767 (2014), cert. denied, 315 Conn. 912, 106 A.3d 304 (2015). "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petition-

er's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 544, 124 A.3d 1, cert. denied, 320 Conn. 910, 128 A.3d 954 (2015).

Finally, "[t]he conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Brewer* v. *Commissioner of Correction*, 162 Conn. App. 8, 13, 130 A.3d 882 (2015).

I

The petitioner first claims that the habeas court improperly denied his petition for certification to appeal because there was merit to his claim that counsel provided ineffective assistance at trial by failing to take curative actions when the prosecutor vouched for the credibility of the state's witness, Setzer, in summation and improperly stated that no evidence existed against the petitioner's brother, Josue Williams (Josue), related to the drugs and firearm found in the apartment.

"In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim. . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Atkins* v. *Commissioner of Correction*, 158 Conn. App. 669, 675, 120 A.3d

513, cert. denied, 319 Conn. 932, 125 A.3d 206 (2015).

The petitioner argues that statements made by the prosecutor in summation constituted prosecutorial impropriety. Specifically, the petitioner cites comments in which the prosecutor contrasted the credibility of Setzer and Josue. He takes issue with the prosecutor's description of Setzer as "a man with twelve years narcotics experience, who doesn't know this [petitioner], doesn't know his brother, has never seen them before, has no interest in this case and was such a trusted person he was a guard on Air Force One for President Reagan." The petitioner argues that through this statement the prosecutor impermissibly vouched for the credibility of Setzer by asserting that he was a trustworthy person because he was a guard on Air Force One for President Reagan.

Although the claim of prosecutorial impropriety regarding the statements about Josue was not explicit in the petitioner's appellate brief, he clarified at oral argument before this court the nature of his claim.[3] The petitioner argues the following statements made about Josue during rebuttal were improper: "Then you have a two time convicted felon out to protect his brother . . . who knows full well there was no evidence against him but now he can say other things. Now he can say [the drugs are] his because he knows he won't be prosecuted and he shouldn't be prosecuted. There is no true evidence, I submit to you, against Josue." The petitioner claims that these statements offered information to the jury not in evidence that there was "no evidence" or "no true evidence" against Josue. Additionally, he claims that the prosecutor improperly sought to influence the jury by contrasting Josue's motives and testimony with Setzer's impressive credentials rather than contrasting his motives and testimony to the officers as a group.

Before addressing the petitioner's claim, we set forth the standard of review and law governing claims of prosecutorial impropriety. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 522–23, 853 A.2d 105 (2004).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however] [c]ounsel must be allowed . . . gener-

ous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty [is] at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused [is] guilty, he should [nonetheless] be convicted only after a fair trial, conducted strictly according to the sound and well-established rules [that] the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider. . . .

"Finally . . . the defendant's failure to object at trial to each of the occurrences [raised on appeal] . . . as instances of prosecutorial impropriety, though relevant to our inquiry, is not fatal to review of his claims. . . . This does not mean, however, that the absence of an objection at trial does not play a significant role in the determination of whether the challenged statements were, in fact, improper. . . . To the contrary, we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was [improper] in light of the record of the case at the time." (Citation omitted; internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 611–12, 65 A.3d 503 (2013).

A

In the present case, the petitioner claims that the prosecutor improperly vouched for the credibility of Setzer by stating that he was a "trusted person" because he was a guard on Air Force One for President Ronald Reagan. "A prosecutor, in fulfilling his duties, must con-

fine himself to the evidence in the record. . . . Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Medrano*, 131 Conn. App. 528, 541, 27 A.3d 52 (2011), aff'd, 308 Conn. 604, 65 A.3d 503 (2013). Additionally, "the prosecutor may not express his own opinion, directly or indirectly, as to the credibility of the witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions. . . . A prosecutor also may not appeal to the emotions, passions and prejudices of the jurors . . . or otherwise inject extraneous issues into the case that divert the jury from its duty to decide the case on the evidence." (Internal quotation marks omitted.) *State* v. *Santiago*, 269 Conn. 726, 735, 850 A.2d 199 (2004).

Nevertheless, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade [it] to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The state's attorney should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he [or she] is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 41, 100 A.3d 779 (2014).

In the present case, the prosecutor was not presenting facts not in evidence or his personal opinion; rather, he was asking the jurors to draw a reasonable inference from facts in the record. In describing his credentials, Setzer testified that he was in the Air Force Security Police, and was assigned to the Elite Guard Unit at Travis Air Force Base and to Air Force One, where he was employed to secure Air Force One and the president. Although Setzer did not testify, nor did anyone else, to the qualifications required for an assignment to guard Air Force One and the president, it is a reasonable inference that such a position requires a degree of trustworthiness. The prosecutor's statements summarized the evidence and asked the jury to make a reasonable inference therefrom. Moreover, although the prosecutor did not formulate the statement that Setzer was a "trusted person" as a submission, when

he raised the inference that Setzer was trustworthy as a guard to the president a second time, he restricted his language stating, "I submit . . . ."[4] Accordingly, the prosecutor did not express his own opinion or provide facts not in evidence, and, thus, the statements regarding the trustworthiness of Setzer were not improper. Consequently, the habeas court correctly concluded that counsel was not ineffective at trial for failing to challenge these statements.

B

The petitioner also argues that the prosecutor improperly introduced facts not in evidence. Essentially, he contends that when the prosecutor stated that there was "no evidence" or "no true evidence" against Josue, he effectively conveyed that the court had dismissed the charges against Josue because there was no evidence against him although the only evidence presented was that the charges against Josue had been dismissed. The following additional facts are relevant to the resolution of this issue.

In a written statement to police read into evidence by the clerk, the petitioner stated that his address was 691 Osgood Avenue, New Britain. He stated that on September 3, 2004, "I went out on the back porch of where I had been staying at [636] Riverside Avenue, Apartment 2B, in Waterbury. The next thing I knew was that the cops were yelling at me. I went back into [my][5] apartment and the cops smashed in the front door of the apartment." The petitioner also stated, "I have been staying in this apartment with a girl named Maria Gonzales. I have been staying with Maria for about three weeks ever since I met her at the Club Blu in Hartford. I knew that I had warrants in New Britain and I wanted to stay out of New Britain."

Josue's testimony at trial conflicted with the petitioner's written statement. Josue testified, inter alia, that he, Josue, was married but had been having a romantic or sexual relationship with Gonzales since meeting her at Club Blu several weeks before the date in question and that the drugs were his and Gonzales'. He also testified that the petitioner had been living with him at 691 Osgood Avenue in New Britain, not at the Waterbury apartment, that the petitioner did not know about the drugs, was not in a relationship with Gonzales, and that the petitioner only came to the apartment with him. Additionally, he testified that, contrary to Setzer's testimony, law enforcement officers did not find the drugs on the kitchen counter but in a bedroom. Josue also testified that law enforcement asked him to "pin" the drugs on the petitioner so that Josue could avoid prosecution.

The state challenged Josue's credibility during cross-examination. Josue admitted that he had two prior felony convictions and that he loved his brother, that he

did not want to see anything happen to him, and that he wanted to protect him. Additionally, Josue testified that the charges against him in a related case concerning the drugs found in the apartment had been dismissed and that his attorney had told him that the charges would not come back against him. He later equivocated and testified that his attorney was uncertain about whether the charges could come back.

The prosecutor stated the following, inter alia, about Josue during rebuttal summation:

"Furthermore, [Josue] knows nothing can happen to him because, as he said, the charges were dismissed and he admitted, he didn't want to do it, but he reluctantly admitted [his attorney] told him nothing could happen to him. And I submit to you the charges against Josue were dismissed because there was no evidence [that] pointed to Josue. He didn't live there for three weeks. This [petitioner] lived there.

\* \* \*

"But contrast the credibility of Josue, a man who is a two-time convicted felon, has no reason to believe he'll be charged in this case because none of the evidence points to him, loves and protects—wants to protect his brother and acknowledges he doesn't want anything to happen to him.

"Then you have the two-time convicted felon out to protect his brother, who [would rather] not see anything happen to his brother, who knows full well there was no evidence against him but now he can say other things. Now he can say it's his because he knows he won't be prosecuted and he shouldn't be prosecuted. There's no true evidence, I submit to you, against Josue."

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 544, 529 A.2d 653 (1987). Again, "[i]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 41. Where a prosecutor's arguments "[skirt] the boundaries of permissible argument . . . [w]e are mindful . . . that closing arguments of counsel are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial [impropriety], they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that

meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Haase*, 243 Conn. 324, 335–36, 702 A.2d 1187 (1997), cert. denied, 523 U.S. 1111, 118 S. Ct. 1685, 140 L. Ed. 2d 822 (1998).

"To draw from the realm of statutory interpretation, language is deemed ambiguous when read in context, [it] is susceptible to more than one reasonable interpretation. . . . To be clear, in furtherance of our policy of not assigning ambiguous remarks their most damaging interpretation from an array of less damaging interpretations, in those cases where a prosecutor's allegedly improper statements are genuinely ambiguous, the ambiguity will be construed in favor of the state. Put another way, for the purpose of determining whether a challenged remark is improper, when selecting among multiple, plausible interpretations of the language, this court will assign the remark the less damaging, plausible meaning." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Felix R.*, 319 Conn. 1, 13, 124 A.3d 871 (2015).

In the present case, the respondent, the Commissioner of Correction, argues that the prosecutor was not testifying to facts not in evidence with respect to Josue's exposure to criminal liability but, instead, was summarizing the evidence and asking the jury to draw reasonable inferences therefrom. We agree.

The petitioner's argument requires one to restrictively isolate the following statements made by the prosecutor: "And I submit to you the charges against Josue were dismissed because there was no evidence [that] pointed to Josue. . . . Then you have the two-time convicted felon . . . who knows full well there was no evidence against him . . . . There's no true evidence, I submit to you, against Josue." Once isolated, the argument would proceed that either the prosecutor was providing unsworn testimony that there was no evidence against Josue or that, because the charges were dismissed, there was no evidence against him. The former would be improper unsworn testimony; the latter would improperly ask the jury to speculate because there are multiple reasons that criminal charges can be dismissed. See Practice Book § 41-8.[6] This overly constrains the prosecutor's statements and removes them from the larger context of his rebuttal summation.

There was ample, and conflicting, evidence in the record concerning Josue leading up to and after law enforcement's entry into the apartment on September 9, 2004, to weigh his potential exposure to criminal liability. Reading the prosecutor's statements about Josue in the full context of the state's rebuttal, the prosecutor summarized the available evidence and asked the jury to draw reasonable inferences from that evidence. Specifically, the prosecutor asked the jury to conclude, based on the evidence presented that con-

flicted with Josue's testimony, that there was no evidence against Josue and that is why the charges against him were dismissed. Accordingly, the prosecutor's statements regarding Josue were not improper and, consequently, counsel did not render ineffective assistance of counsel at trial by not challenging such statements.[7]

Because the challenged statements of the prosecutor were not improper, there was no prosecutorial impropriety. Curative actions by counsel at trial were not required, and his actions at trial were not deficient.

## II

The petitioner next claims that the habeas court improperly denied his petition for certification to appeal because there was merit to his claim that counsel provided ineffective assistance on direct appeal by failing to raise a claim of prosecutorial impropriety. We disagree.

Our standard of review for this claim is similar to the standard set forth in part I of this opinion, with the exception of the second prong of *Strickland.* "In regard to the second prong, our Supreme Court distinguished the standards of review for claims of ineffective trial counsel and ineffective appellate counsel. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 721–24, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). For claims of ineffective appellate counsel, the second prong considers whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. Id., 722. This requires the reviewing court to [analyze] the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 535, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

For all of the reasons previously discussed, there is no reasonable probability that, but for appellate counsel's failure to raise a claim of prosecutorial impropriety, the petitioner would have prevailed in his direct appeal to obtain a reversal of his conviction or the granting of a new trial. See id. The prosecutor's statements during closing arguments regarding Setzer and Josue were not improper. Consequently, counsel was not ineffective for not raising such claims on direct appeal.

On the basis of the foregoing analysis in parts I and II of this opinion, we conclude that the petitioner's claims are not debatable among jurists of reason, that a court could not resolve the issues in a different manner, and that the questions do not deserve encouragement to proceed further. Accordingly, we conclude that

the court did not abuse its discretion by denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The same attorney represented the petitioner in his criminal trial and direct appeal. We therefore refer to this attorney simply as counsel.

[2] The petitioner also claimed that his constitutional rights to due process and a fair trial were violated by the prosecutor's (1) failure to disclose favorable material evidence; (2) knowing presentation of—and failure to correct—false testimony; and (3) improper comments during closing arguments. The petitioner withdrew the second claim at trial and he does not raise a claim on appeal related to the remaining issues.

[3] We ordinarily do not address arguments raised for the first time during oral argument. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Nevertheless, by interpreting the argument section of the petitioner's brief in conjunction with his oral argument, we have discerned what we believe is his claim on appeal. Further, there is no prejudice to the respondent, the Commissioner of Correction, as he fully briefed the issues pertaining to the statements regarding Josue. See *Calvert* v. *University of Connecticut Health Center*, 142 Conn. App. 738, 742 n.5, 68 A.3d 107 (2013).

[4] The prosecutor stated as follows: "So you got Setzer, twelve year narcotics officer. Doesn't know this defendant, doesn't know his brother. Only goes to that scene, not involved in this overall investigation, no bias, no interest, no ax to grind, former guard for the President. I submit to you, ladies and gentlemen, untrustworthy people are not given that position."

[5] A discussion that followed indicates that the clerk misread the statement reading "the apartment" rather than "my apartment."

[6] Practice Book § 41-8 provides: "The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

"(2) Defects in the information including failure to charge an offense;

"(3) Statute of limitations;

"(4) Absence of jurisdiction of the court over the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial;

"(6) Previous prosecution barring the present prosecution;

"(7) Claim that the defendant has been denied a speedy trial;

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid; or

"(9) Any other grounds."

[7] To the extent the petitioner argues that the comparison of Setzer's credentials and Josue's testimony and credibility was improper, this argument is without merit. The petitioner put their testimony in conflict as a theory of his case and in closing arguments by contesting the location of the drugs. Setzer testified that the drugs were in the kitchen, but Josue testified that they were in the bedroom. Consequently, the credibility of the two men was at issue.