WALTER R. STRAIN, SR. *v.* WARDEN OF CONNECTICUT STATE PRISON

SUPERIOR COURT       HARTFORD COUNTY       FILE No. 151105

Memorandum filed January 26, 1968

*Herbert G. Appleton,* special public defender, for the plaintiff.

*Harold M. Mulvey,* attorney general, and *Donald E. Wasik* and *John K. Jepson,* assistant attorneys general, for the defendant.

PALMER, J. This is an application for a writ of habeas corpus alleging unlawful imprisonment, filed by the plaintiff acting pro se. The writ issued, and the court appointed a special attorney to represent the plaintiff, pursuant to Practice Book § 472D. A hearing was held at the state prison in Somers on December 5, 1967. The question in issue is whether the prison authorities have correctly determined the period of time during which the plaintiff may be retained in prison after he was returned as a parole violator.

On December 13, 1963, the plaintiff was sentenced to the state prison for a term of not less than one year and not more than five years for the crime of theft of a motor vehicle, in violation of § 53-57 of the General Statutes. On December 11, 1964, he was released from prison under parole supervision. At that time, the term of his maximum sentence was scheduled to expire on January 2, 1968. On or shortly after June 2, 1966, the plaintiff's parole officer reported to the executive secretary of the board of parole that the plaintiff was under investigation for violation of parole effective as of May 25, 1966. At a meeting of the board of parole held on

July 20, 1966, the executive secretary submitted to the board a report setting forth that the plaintiff violated his parole on May 25, 1966, by leaving his last known address and absconding to parts unknown. The report recommended that the plaintiff's parole be revoked, that he be declared delinquent as of May 25, 1966, and that he be ordered returned to the state prison as a parole violator in the event he was apprehended in the future. The report was read and accepted, and the recommendations were adopted by the board. Thereafter, the executive secretary issued a warrant, which was dated May 25, 1966, for the plaintiff's return to prison. On December 25, 1966, the plaintiff was arrested on a number of charges as a result of which he was sentenced to a term of imprisonment in jail. The above-mentioned warrant was lodged with the state jail administrator, and at the expiration of his jail sentence he was returned to the state prison by a parole officer on February 21, 1967.

As previously noted, on December 11, 1964, when the plaintiff was released on parole, his maximum term was scheduled to expire on January 2, 1968. This date allowed for the time earned by the plaintiff as a commutation or diminution of his sentence in accordance with § 18-7 of the General Statutes, which is commonly called "good time." Upon his return to prison on February 21, 1967, the plaintiff was, in the language of the prison official who testified, "charged with 271 days from the day on which he violated his parole, May 25, 1966, to the date of his return on February 21, 1967." This period of 271 days was added to January 2, 1968, the date his maximum term had previously been scheduled to expire, thereby advancing the scheduled date of the expiration of the term of his sentence to September 29, 1968. Since his return to prison, the plaintiff has earned twenty-six days of "good time,"

and if he continues to earn "good time," he will be entitled to his release on July 15, 1968, assuming that the unexpired portion of his term has been correctly determined.

The prison authorities have computed the period of time during which the plaintiff may be retained in prison after his return as starting on May 25, 1966, the day he was retroactively declared to be in violation of parole, and continuing until February 21, 1967, the date of his return. As a result, the running of his sentence stopped on said May 25, 1966, and did not resume until February 21, 1967. The decisive question is whether in the computation of the period in question it was proper and lawful to use May 25, 1966, as the starting date. The answer to the question requires consideration of two statutes. Section 54-127 provides: "The request of said board of parole, or of any person authorized by the rules of said board, shall be sufficient warrant to authorize any officer of said board or said prison, or any officer authorized by law to serve criminal process within this state, to return any convict on parole into actual custody . . . ." Section 54-128 (a) provides: "Any paroled convict who has been returned to said prison for violation of his parole may be retained in said prison for a period equal to the unexpired portion of the term of his sentence *at the date of the request or order for his return* less any commutation or diminution of his sentence earned . . . ." (Italics supplied.)

Section 54-128 (a) makes it clear "that when a man is returned for violation of his parole he is to be held only for a time equal to the balance of his sentence remaining after the date of the issuance of the [request or] order for his return. That is, the running of a prisoner's sentence may be suspended between the time that the [request or] order for his

return as a parole violator is made and the time when he actually gets back into prison, but while he is out of prison by virtue of his parole his sentence is continuing to run until . . . [a request or] order for his return is made." *Evans* v. *Walker,* 16 Conn. Sup. 22, 23 *(Inglis, J.).* Accordingly, the plaintiff's sentence legally continued to run until a request or order for his return was made. Its running was not suspended as of May 25, 1966, the day he was later declared to be in violation of parole, if a request or order for his return was not made on that day.

There remains for determination the date of the request or order for this plaintiff's return to prison. As § 54-127 provides, the request may be made by the board of parole or by any person authorized by the rules of the board. Rule 9 of the rules and regulations of the board of parole (1958) specifically authorizes the executive secretary of the board to order a parolee to be retaken and returned to the state prison, if the executive secretary has reasonable cause to believe that the parolee has violated or is about to violate the conditions of his parole. The executive secretary did not make any request or order that the parolee be retaken and returned to prison, as he could have done. He did, as he testified, instruct the parole officer "to look around for [the plaintiff] to see if he could locate him in an effort to, well, to assist him in trying to save his parole. This is a procedure that we follow in practically all cases that abscond from parole supervision and we generally give these fellows a month and sometimes two before we actually report their cases to the board." It follows that there was no request or order for the plaintiff's return to prison until July 20, 1966, when the board adopted the executive secretary's recommendation that the plaintiff's parole be revoked and that he be returned

as a parole violator. On that day, and not until that day, the running of the plaintiff's sentence was suspended, and when he was returned to prison on February 21, 1967, he should have been charged with 217 additional days to serve beyond the scheduled date of the expiration of his sentence, said 217 days representing the period of time between July 20, 1966, the date of the board's order for his return, and February 21, 1967, the date of his actual return to prison, instead of being charged with 271 additional days to serve, as happened here.

The date of May 25, 1966, was undoubtedly used because of a rule of the board of parole, which is authorized to "establish such rules and regulations as it deems necessary, upon which . . . [convicts] may go upon parole, and enforce such rules and regulations and retake and reimprison any convict upon parole, for any reason that seems sufficient to said board." General Statutes § 54-126. Rule 10 (C) of the board provides that a "parolee whose parole is revoked shall be recommitted to prison for a period equal to the unexpired portion of the term of his maximum sentence *at the date of his delinquency* as determined by the Board, less any time earned in diminution of sentence . . . ." (Italics supplied.) In this case, the board of parole determined on July 20, 1966, that the plaintiff was delinquent as of May 25, 1966, and the prison authorities were acting in accordance with this determination when they computed the period of time that the plaintiff was required to serve after his parole was revoked.

Section 54-128 (a) provides that a paroled convict who has been returned to prison for violation of his parole may be retained in prison for a period equal to the unexpired portion of his term "at the date of the request or order for his return," while rule 9 (C) provides that he shall be recommitted to

prison for a period equal to the unexpired portion of the term of his maximum sentence "at the date of his delinquency" as determined by the board. Clearly, the rule of the board of parole is in direct conflict with the statute. The statute says the unexpired portion of the term is to be determined at the date of the request or order for the parolee's return; the rule says it is to be determined at the date of his delinquency. In such a case, obviously the statute must prevail, and the rule must be declared void to the extent that it conflicts with the statute. 73 C.J.S. 422, Public Administrative Bodies and Procedure, § 103; 42 Am. Jur. 355, Public Administrative Law, § 49. Accordingly, the portion of rule 9 (C) that requires the unexpired term of a parolee's sentence to be fixed at the date of his delinquency as determined by the board of parole is invalid because it is in direct conflict with § 54-128 (a).

In the instant case, the unexpired portion of the term of the plaintiff's sentence at the date of the order for his return, July 20, 1966, was the period between that day and January 2, 1968, the day his term was scheduled to expire at the time he was released on parole. This period is 532 days. Therefore, upon his return to prison on February 21, 1967, he was subject to retention for 532 days, that is, until August 4, 1968, and not until September 29, 1968, as determined by the prison authorities. The maximum term of his sentence will expire on August 4, 1968, and he may not be retained in prison thereafter. However, the plaintiff will also be entitled to diminution of his sentence for any time earned after his return to prison on February 21, 1967. There was testimony that the plaintiff had earned twenty-six days as of December 1, 1967, and he may thereafter earn additional time in diminution of his sentence. He will be entitled to his

release on August 4, 1968, less all time earned after his return to prison on February 21, 1967.

The plaintiff claims that he should receive credit on his sentence for the entire period between the time of his release on parole on December 11, 1964, and the time he was returned to prison on February 21, 1967, so that he was entitled to release on January 2, 1968, the date his sentence was scheduled to expire when he was released on parole. This claim is without any merit whatever.

As the period of time during which the defendant warden is authorized to retain the plaintiff in prison, pursuant to § 54-128 of the General Statutes, has not yet expired, he is not entitled to release at this time.

Judgment may enter dismissing the writ.