******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRINCE LEWIS *v.* COMMISSIONER OF CORRECTION
(AC 37005)

Lavine, Alvord and Prescott, Js.

*Argued March 14—officially released June 7, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Fuger, J.)

*Vishal K. Garg*, for the appellant (petitioner).

*Stephen R. Finucane*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney gen-
eral, and *Steven R. Strom*, assistant attorney general,
for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Prince Lewis, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion when it denied his petition for certification to appeal, and (2) improperly rejected his claim that his constitutional right to due process under the federal and state constitutions was violated by the extraordinary delay in his extradition and reincarceration after he absconded from supervised home release. Specifically, the petitioner claims that "Connecticut waived jurisdiction over the petitioner" because of its "failure to make reasonable efforts to return the petitioner to its custody," and, accordingly, could not "compel him to complete his prior sentence." We dismiss the petitioner's appeal.

The following facts and procedural history are relevant to the resolution of the petitioner's claims. The petitioner was convicted of the sale of narcotics in violation of General Statutes § 21a-277 (a), and, on May 9, 1989, was sentenced to a term of ten years incarceration, execution suspended after three years, followed by a period of probation. While incarcerated, the petitioner submitted a community release application, dated May 18, 1989, requesting a transfer to a community release program and agreeing to abide by any conditions imposed by the respondent, the Commissioner of Correction. On June 7, 1989, the petitioner was transferred from the Carl Robinson Correctional Institution to a supervised home release program,[1] pursuant to General Statutes (Rev. to 1989) § 18-100 (e).[2] That same day, the petitioner signed a document, titled "CONDITIONS OF COMMUNITY RELEASE," which acknowledged his understanding of and agreement to twenty enumerated conditions. The petitioner was released to his aunt's residence in New London, and, initially, he complied with the program's requirement to report to the New London parole office. He was last seen by a parole officer on August 16, 1989. Subsequent attempts to locate the petitioner, by home visits, telephone calls and correspondence, were unsuccessful. On October 17, 1989, he was declared an absconder by the respondent.

The petitioner was not in the respondent's physical custody between October 18, 1989, and December 20, 2013. On that date, he was extradited from the state of New York and was returned to the respondent's custody. During his twenty-four years at large, the petitioner sometimes lived in the community under his name Prince Lewis. At other times, however, he used as many as four different aliases and lived in as many as nine different residences. He also utilized five birthdates and two social security numbers. The petitioner

was arrested fifteen times, and was convicted of four felonies and three misdemeanors. The petitioner's criminal conduct occurred in the states of New York, Maryland and Illinois.

On February 24, 2014, the petitioner, as a self-represented party, filed a petition for a writ of habeas corpus and commenced the present action. After the petitioner's request for appointment of counsel was granted, his attorney filed an amended two count petition on May 16, 2014. In his first count, the petitioner alleged that he had completed his sentence because it had continued to run until the respondent issued an order for his return on November 25, 2013. In his second count, the petitioner alleged that "the [twenty-four year] period of time that elapsed . . . between the suspension of the petitioner's sentence and the petitioner's return to actual custody was in violation of the petitioner's right to due process." He further alleged that "[t]he respondent failed to diligently pursue the return of the petitioner to the [respondent's] custody," that "[t]he petitioner could have been found through reasonable diligence," that "[t]he delay [was] extraordinary and unreasonable," and that "[t]he delay prejudiced the petitioner."

The parties submitted pretrial briefs to the habeas court. The petitioner's May 12, 2014 pretrial brief recited twenty-two facts that were stipulated to by the parties. His sole argument centered on the fact that the respondent had not issued a remand to custody order until November 25, 2013. Relying on *Strain* v. *Warden*, 27 Conn. Supp. 439, 242 A.2d 90 (1968), and *Evans* v. *Walker*, 16 Conn. Supp. 22 (1948), the petitioner claimed that his sentence had continued to run and had been served in its entirety, thereby making any continued confinement illegal. Other than stating that "[t]he petitioner's continued confinement violates the petitioner's constitutional right to due process," the petitioner did not address the second count of his amended petition.

The respondent's May 15, 2014 pretrial brief distinguished the cases cited by the petitioner on the ground that they addressed violation of parole issues. Referring to our Supreme Court's decision in *Asherman* v. *Meachum*, 213 Conn. 38, 48–49, 566 A.2d 663 (1989), the respondent argued that there are critical differences between supervised home release and parole. The petitioner, who was on supervised home release, remained in the respondent's legal custody as if he continued to be incarcerated in a locked facility, whereas a parolee would be in the custody of the Board of Pardons and Paroles.[3] With respect to the second count of the amended petition, the respondent characterized the claim as one of laches and argued that the doctrine of laches is not applicable to governmental entities.

The trial before the habeas court was held on May 23, 2014. The petitioner's witnesses were Michelle

Deveau and himself. The respondent called Louis Roy, a retired employee of the Department of Correction, and Joseph Haggan, the director of parole and community services for the Department of Correction, who testified that the petitioner had never been on parole. Following the testimony of the four witnesses, the parties' counsel made closing arguments. The petitioner's counsel, after stipulating that the petitioner was on supervised home release, argued that supervised home release was "effectively the same thing" as parole. He claimed that the petitioner should be treated the same as a parolee when calculating when his sentence had been completed.

With respect to the petitioner's due process claim, the petitioner's counsel made the following argument: "[In 2000], the [Department of Correction] had an opportunity—that it may or may not have had before— to know the exact location of [the petitioner] and bring him into Connecticut, but the [Department of Correction] instead chose to sit on its hands and do nothing, and, as a result, it waited another thirteen years to actually choose to use its authority to bring in [the petitioner]. *And that kind of decision is arbitrary and capricious, and it's a violation of due process because it's fundamentally unfair.*" (Emphasis added.) Later during his argument, the petitioner's counsel stated: "So the second claim essentially is what we've kind of already touched on, which is that it's fundamentally unfair to remand the petitioner into custody after twenty-five years." The respondent's counsel, in response, stated that the petitioner had provided no authority for his due process claim. He further argued: "Essentially, their argument is a laches argument, that the state waited too long in exercising its authority to retake the petitioner into actual custody. . . . [N]o time runs against the state." In rebuttal, the petitioner's counsel reiterated that the passage of time made it "fundamentally unfair" to bring the petitioner back into physical custody.

The court issued its memorandum of decision on May 30, 2014. Most of the court's analysis focused on the petitioner's primary claim that his sentence had continued to run after he absconded from the respondent's legal custody because the respondent had not timely issued a remand to custody order. The court dismissed that claim on the basis that the petitioner "was not on parole status." The court discussed the petitioner's due process count in a single paragraph of the decision, characterizing his claim as follows: "[T]he petitioner alleges that the delay of 8829 days between the time the petitioner absconded and his ultimate return to custody was extraordinary and unconscionable and that the respondent should now be prevented from confining the petitioner. In essence, the petitioner argues that it is fundamentally unfair at this point to imprison the petitioner for a sentence that was adjudged so many

years ago. This court disagrees. . . . [T]he petitioner implicitly argues that the equitable doctrine of laches should apply here. . . . [T]his proceeding is not an equitable proceeding and turns, not upon equity, but an interpretation of the law. . . . [T]he petitioner is the one who absconded and to reward him for his wrongdoing by excusing him from having to serve the remainder of his lawfully adjudged sentence is clearly not appropriate." Accordingly, the habeas court denied his petition for a writ of habeas corpus. On June 11, 2014, the court denied his petition for certification to appeal.

On June 19, 2014, the petitioner filed a motion "to reargue for a writ of habeas corpus." For the first time, the petitioner argued that the respondent's delay constituted "gross negligence" that constituted "a waiver of jurisdiction." He claimed: "[W]hen a demanding state takes an action that operates as a waiver of jurisdiction over a fugitive, it forever loses the authority to have that fugitive extradited to the demanding state to complete his sentence." In his motion to reargue, the petitioner supported this argument with cases that he had not cited in his pretrial brief or during the habeas trial. The respondent filed an objection to the petitioner's motion to reargue. The court denied the motion on June 23, 2014.[4] This appeal followed.[5]

On appeal, the petitioner does not challenge the court's determination that the petitioner's sentence did not continue to run while he was out of the respondent's physical custody and, therefore, had not been completed. The petitioner claims only that the court abused its discretion in denying his petition for certification to appeal and that the court improperly concluded that his constitutional right to due process had not been violated by the delay in his extradition and reincarceration after he absconded from supervised home release. As briefed, the basis for his claim of a due process violation is his argument that the respondent waived jurisdiction and no longer had the authority to compel him to complete his prior sentence. The respondent argues that the petitioner's claim should not be reviewed by this court because "[the] petitioner failed to timely raise his 'waiver of jurisdiction' theory before the habeas court." We agree with the respondent.

"We begin by setting forth the applicable standard of review. Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an

abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits." (Internal quotation marks omitted.) *Earl G.* v. *Commissioner of Correction*, 106 Conn. App. 758, 760–61, 943 A.2d 1118, cert. denied, 288 Conn. 901, 952 A.2d 809 (2008).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, 150 Conn. App. 362, 366, 90 A.3d 368, cert. denied, 314 Conn. 919, 100 A.3d 852 (2014). The petitioner's underlying claim is that the habeas court improperly failed to conclude that the respondent waived its jurisdiction over the petitioner, thereby losing its authority to reincarcerate him to complete the remainder of his sentence. Because this claim was not presented to the habeas court, in his amended petition, in his pretrial brief or during the habeas trial, the habeas court never made a finding[6] as to the petitioner's waiver of jurisdiction theory. The court determined that the petitioner's reincarceration was not "fundamentally unfair" and that the doctrine of laches was not applicable, which were the theories the petitioner presented to the court.

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Zollo* v. *Commissioner of Correction*, 133 Conn. App. 266, 277, 35 A.3d 337, cert. granted on other grounds, 304 Conn. 910, 37 A.3d 1120 (2012) (appeal dismissed May 1, 2013). "While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . Having not raised [an] issue before the habeas court, [a] petitioner is barred from raising it on appeal. This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim." (Internal quotation marks omitted.) *Hankerson* v. *Commissioner of Correction*, supra, 150 Conn. App. 367. "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the

opposing party." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 784–85, 114 A.3d 925 (2015).

In the present case, the petitioner alleged in the second count of his amended petition only that the respondent's failure to diligently pursue him resulted in an unreasonable delay that violated the petitioner's due process rights. In the petitioner's pretrial brief, no mention is made of a waiver of jurisdiction or the loss of authority to reincarcerate the petitioner. No case law is cited with respect to the petitioner's due process claim. At the habeas trial, the petitioner characterized his due process claim in terms of "fundamental fairness," and the respondent characterized the petitioner's claim as one of laches. The habeas court decided the claim as it was presented by the parties and made no findings whatsoever with respect to a waiver of jurisdiction issue. The first time that the petitioner raised a waiver of jurisdiction claim was in his motion to reargue filed after the habeas trial and after the habeas court issued its memorandum of decision on the merits. At that point, the presentation of that issue was untimely[7] and the court denied the petitioner's motion for reasons not revealed by the record.

From our careful review of the record, we conclude that the petitioner has not demonstrated that the issues raised with regard to the court's denial of his petition for a writ of habeas corpus are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserved encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion LAVINE, J., concurred.

[1] According to the respondent, it administered a number of community release programs in May, 1989, one of which was the supervised home release program.

[2] At the habeas trial, Michelle Deveau, a records specialist at the Department of Correction, testified that the supervised home release program was phased out in the early 1990s.

[3] "For a person on home release, as for any incarcerated prisoner, absconding constitutes a new crime, escape, that may lead to an added prison term. . . . For a parolee, however, the only sanction for absconding is that a parole violator risks his return to the custody of the commissioner of correction for the unexpired portion of the term of his original sentence." (Citation omitted.) *Asherman* v. *Meachum*, supra, 213 Conn. 48–49.

[4] The habeas court denied the petitioner's motion to reargue without explanation. In his appeal form, the petitioner stated that he was appealing from the "[d]enial of the petition for a writ of habeas corpus and the motion to reargue/reconsider." The petitioner, however, does not argue on appeal that the habeas court abused its discretion in denying the motion to reargue. Because the motion to reargue was denied without explanation, it is unclear whether the habeas court denied it because the petitioner was improperly raising a new claim for the first time in the motion or whether it simply disagreed with the merits of this waiver argument. The petitioner sought an articulation of the court's decision on the motion to reargue, which was denied.

[5] During the pendency of this appeal, the petitioner, having served out

the unsuspended portion of his ten year sentence, was released from prison. Prior to his release, the petitioner successfully applied to have the supervision of his three year period of probation transferred from Connecticut to the state of New York pursuant to the Interstate Compact for Adult Offender Supervision. See General Statutes § 54-133 et seq. Accordingly, upon his release, the petitioner reported to and was placed under probation supervision by New York's Department of Corrections and Community Supervision.

In light of the petitioner's release from prison in Connecticut, the respondent moved to dismiss this appeal as moot. According to the respondent, because the petitioner was no longer incarcerated and his probation was not being supervised in Connecticut, any relationship between the parties had ended, and no practical relief could flow from an adjudication of this appeal. The petitioner opposed the motion, arguing that his challenged sentence included the period of probation he continued to serve as well as the seven year suspended portion of his sentence, for which he remained obligated to serve should he violate his probation. We agreed with the petitioner that his appeal was not moot and denied the motion to dismiss.

[6] Both the petitioner and the respondent state in their appellate briefs that the waiver of jurisdiction issue is a factual determination.

[7] "[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citations omitted; internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001).